v. PTO and Jar, Chen, Wang, et al. 2011-15-70 Mr. Sonnenberg Good morning, Your Honor. May it please the Court, I am Jeffrey Sonnenberg and I represent appellant PLASMART, Inc. in the present case. The present case, as small of a case as it may seem on its face, actually presents, I think, an issue of great importance. And the issue is this, an issue that may change fundamentally how certain aspects of references are applied in the Patent Office. The issue is this. Can the Patent Office, in analyzing prior art references, ignore teachings of the drawings of those references in favor of what the specification says about those drawings? Or must the teachings of the drawings be independently analyzed, independent of the written spec? That is, is a picture really worth a thousand words or do you need a thousand words to explain the picture? The case is a low-tech case. We're not talking about integrated circuits or recombinant DNA. We're not talking about particle accelerators. It may be very low-tech. It doesn't get much lower and it's about six inches off the ground to boot. It's a child's ride-on toy and it's an area where, if ever there was an area that the picture explains it all, this is it. You look at the thing, my five-year-old, who's now six, can understand how the thing works, can understand the mechanics of it intuitively. Although the mechanics of how it operates as a potty were not intuitive to me. Did you catch that? One of the translations says that, just disclosing that it also operates as a potty and the other one says it doesn't. There's two different translations. It's actually a different reference. It's a translation of a reference that ended up not being relevant yet. Somewhere in the world it came up as a ride-on toy that is also a potty. All right. Not relevant here. Wow. Yes, I agree. The structure at issue here is a forwardly extending arm. It's an arm that extends off forward. Let me tell you what I think your problem is. I think your problem is that it may well be that a forwardly extending arm to prevent the thing from tipping over was in the prior art and that there was a motivation to combine that with the scooter or whatever this thing is. But the question is whether there was a motivation to attach it to a particular place where it was attached and that the placement of the attachment is argued to have some benefits which wouldn't exist in the prior art simply from combining the arm with the scooter. Respectfully, your honor, I don't think that properly characterizes the issue. What happened here was there was a drawing in Song. Song is a Chinese language reference. It's got two drawings. Actually, I think it's four drawings. There's one drawing that's at issue here, figure one. Three different people still in the yard looked at this figure and said, this figure when you look at it shows the forward arm, the forwardly extending arm, and it shows it the same way in the same position as Clamp. Well, I'm accepting that, but I'm saying that in addition to that, if you do combine the two references, you don't get the attachment to the driven member in a way that when the driven member is turned around that the arm itself moves so that it is more likely to support the scooter from tipping over. Do you understand what I'm saying? I believe I do, your honor. That would go to I think what's labeled as point B in the brief, and that's this notion of common sense. Does common sense dictate that combining the Han Dong reference with Song gets you a rejection under 103? Does it get you to what's been claimed? But to get there, you first have to get to this issue which implicates 102, a single reference, just Song, in validating the patented issue. But I don't understand. I mean, to me the anticipation argument doesn't work because the prior references don't show attaching this wheel to the driven member. Well, that's interesting, your honor, that the court expresses that view because I don't see anywhere in the board's opinion that says that. What I see in the board's opinion— Well, I interpret them to be saying that, but let's not get distracted by the anticipation issue. Let's assume for the moment that you lose on that because the prior doesn't show attaching the wheel to the driven member the way it's shown here. Well, if you're only going to focus on the 103 issue, I think common sense dictates you have a reference, a hands-on reference, that shows a body of the device that is not, looking down from the top, is not square. You cannot put the wheel where Song, in the court's just articulated interpretation, would have them be put, the same interpretation that the board put forth. They cannot because the device is a pointy nose. And so anyone looking at this and watching the thing rotate, this prior art of a hands-on, watching the wheels rotate back and forth and the shaft on which the wheels are mounted, the driven wheels, rotate, would understand that in order to prevent the thing from tipping over left to right, you have to get the so-called safety wheels out to the side where it's tipping. And looking at figure one of Song, figure one alone, and what that teaches is it teaches an arm extending out. And so once you have a driven portion that rotates side to side, it is common sense to put that extending arm, which I believe Song actually does show, but to take the court's hypothetical here, to take the court's position, I should say, it's common sense, as anyone knows, if you're falling to the left, you've got to get your leg out to the left to stop from falling over. So it's common sense to combine the two in just the way that the court, I think, has indicated would not be common sense. I think that's error. But the more important issue here, to even get there, is you have to figure out what Song shows. Because if Song does show the arm, as the three examiners on re-exam said it does, the figure alone, then I think the court's argument that the 103 rejection would fail, I think that argument goes out the window. And that's the problem here. The problem here is that the Song figure 1 conveys something. You pick it up and you look at it and the picture tells a thousand words. Yeah, but the spec provides the words that go with the picture. Ah, there's the crux of the issue, Your Honor. The problem here is we have what I call, in the oral argument before the board, a lousy drawing. That, of course, that language was taken out of context by the board. It's lousy because the teachings of the drawing itself contradicts what the spec says about it. And three different examiners, the examiner on re-exam, and the two conferees, the conferees under MPEP 2671.03. So three examiners looked at this and they all said, Yeah, if you look at the drawing, you see this forwardly extending arm, extending from the driven portion. They did the right thing. They said, What does the drawing show? It's taught something. I've looked at it. I've seen it. It's taught me something. Now I might learn something else by reading the spec, but I can't un-teach what it's been taught. I can't un-teach it. That's not true. You can un-teach it. If the spec directly contradicts it, directly says, No, that's not an arm extending. It may look that way in the picture, but it's not. It's actually a real joint to the body, not the twisting member. Then, oh, yes, that's what that does disclose then. You take the spec as a whole. You don't extract a piece of it and ignore the rest of the specification. This is true, but by the same token, as this Court has said time and time again and as recently as 2010 in the George Martin case, it's a teaching for everything it teaches, even accidental teachings. And so I would ask the Court— Well, you suggest even accidental teachings, but I think the question is does this disclose an additional embodiment to what's disclosed in the spec? Or is this the embodiment of what is disclosed in the spec and characterized more particularly improperly? Well, I would answer that, Your Honor, respectfully with this question. Take the hypotheticals in the briefs. If the drawing showed a circle, and someone understood the circle to be functional, and then the spec called it a triangle, has anyone really unlearned the circle? That's not the case here, though, Mr. Soledad. You're talking about a specification which is consistent with the diagram, which explains the diagram. I respectfully disagree, Your Honor. I thought you would. What difference does it make? I mean, suppose it is attached to the body. The concept of having a wheel to prevent the thing from tipping over is disclosed in the prior art, whether you call it on an arm or attached to the body or whatever, right? That's in the language of the claim. That particular limitation is in the claim, is this forwardly extending arm. And the question is, does the prior art have this? Yeah, but the idea of having the wheel attached to a forwardly extending arm as opposed to the body, why isn't that itself common sense? I think it may be. And I think certainly looking at the image, it reinforces that. And I think it's a dangerous road to go down, respectfully, to say that, to hide behind this notion of the specification has to be read as a whole. Because in the real world, if someone looks at that drawing and says, wow, there's an arm there, that's a great idea. Wow, this guy didn't mean to draw an arm. I'm reading the spec, that's supposed to end the body? But wow, I saw that as an arm, that's a great idea. Mr. Sullivan, you wanted to save five minutes. You can continue or save it. Is my time up, Your Honor? No, you're into the time you wanted to save for rebuttal. No, that's it, Your Honor. I think that the point has been made. In short, I think it's very important to understand the notion of unringing the bell. Right. We'll hear from Mr. Rosillo. You were taking ten minutes? That's correct, Your Honor. The patent office and then the patentee is represented by Mr. Raymond. Good morning. May it please the Court. So is this the first for you? Getting to argue in favor of patentability. It is the first time I get to argue in favor of patentability. It feels good, it probably feels good. It does, it does. And as counsel for Play Smart mentioned several times, a picture is worth a thousand words. I would submit in this case, we've got a picture that's worth a thousand ambiguous words. What difference does it make whether it's an arm or it's attached to the body? The board said there was a motivation to combine the two, that is to put a wheel onto the scooter to prevent it from tipping over. I mean, this is pretty simple stuff. I mean, we seem to have gotten into this argument of whether song shows in harm or attached to the body. Who cares? What difference does it make? Well, what difference it makes is that the prior art doesn't show that when you attach the wheels to the tricycle that's disclosed in the prior art that it would be in such a way that it's recited in Claim 1. In Claim 1 specifically recites that the safety wheel has to be attached to a supporting arm. But isn't it obvious to attach it to a supporting arm? No, I don't believe so. It was obvious given the disclosures of the prior art to attach the wheels to the side of the body of the scooter. What's the big difference about doing it with an arm or attaching it to the sides of the scooter? I mean, that doesn't seem like much of an invention. Well, it may not seem like much of an invention, but in relatively simple technologies sometimes small innovations are patentable, and that seems to be the case here. A very small innovation. And the board also looked to the record of this case and found that there wasn't evidence in the record of this case to support either an anticipation or obvious misrejection. It may find it's fact that there's substantial evidence to demonstrate why both Figure 1 of Song, the specification of Song, and the disclosure of the scooter and hand-on, when put together, would not teach Claim 1. What you're saying is the patent system isn't limited to high-tech inventions, and the question is obvious over particular prior arts. That's correct. And the particular prior art in this case... If we affirm, the patent will live unless and until someone else goes after it with a different prior art. That's absolutely correct, Your Honor. And I also want to address, counsel, for place marks. The idea of having a stabilizing wheel, and the board seemed to find great significance in the question whether the wheel is described as attached to the body or attached to a separate arm. The idea of having a stabilizing wheel was in the prior art, correct? That's correct. And so we're talking about the attachment point, right? That's correct. The attachment point. That's the only thing that's different. Is there a difference in the number of wheels? Is there a difference in the number of wheels, and whether they're on the ground and therefore being supported? Not with respect to Claim 1. There are some additional limitations in the Defender Claims that address that, but with respect to Claim 1, that's not the case. Well, it says a safety wheel. Song has two, right? That's correct. In the specification of Song, it discloses that there are two safety wheels, one on either side of the tricycle. How about to support a front portion of the scooter body, how can it support it if it's not on the ground? Is that a relevant point? Yes, Your Honor, that could be a relevant point as well. In the Song reference, what is disclosed is that the wheels are actually off the ground and they don't come in contact with the ground unless and until the scooter tips over during a turn. I also want to address counsel for Placemark's point that you can't look to the specification. In this case, looking to the specification of Song to better understand what is in Figure 1, I think we have at least three reasons why we want to do that. First, it puts the figure in context. What counsel for Placemark is arguing is that we would look at that figure in a complete vacuum and you can't do that. You have to take that figure and you have to apply it to a claim, so you have to understand the context of that figure and the specification provides that. You don't apply the figure to the claim. You interpret the claim in light of the specification and the figure. That's correct. And also, with respect to obviousness, this court has counseled that you need to look to the entire teaching of the reference, both things that teach toward the claimed intervention and what teaches away from the claimed intervention. And finally, I would submit, when doing a substantial evidence review, you're also looking to the entire record. In this case, you'd still be looking to the specification to decide whether or not the board's findings that Figure 1 did not show all of each and every claim limitation of Claim 1 was correct. And when you do go to that specification, it clearly shows that the board was correct, made a proper factual finding, and that represents substantial evidence to support their decision. But the factual finding was based, if I understand the board's opinion correctly, on the attachment point, not on the fact that the wheel was off the ground. Am I correct? That's correct. It was the positioning of the wheel, where it was attached. I see I'm taking up my co-appellee's time. Well, we can hear from Mr. Raymond to defend his patent. And you have five minutes. May it please the Court. My name is Chris Raymond. I'm representing the patent holder, patent holders Gu and Wong in this case. And I just wanted to address Judge Dyke's comments regarding the level of inventiveness here in this. Basically, as you indicated, the claim recites that the arms extended from a certain part of the structure, which would be the twister member. And I have some demonstrators, if I could. Were these notified to us? Were these notified to us? I did indicate this to the Court. Excuse me, counsel. I'm a viewer doctor, so we're recording. My apologies for any confusion. I'm just going to decide when he's seen this before. And these are just reproductions of the figures in the solemn reference. So claim one recites, which isn't shown here, but it's appropriately extending arm. And the arm is recited as being extended from the twister member. Which is defined as being connected to the lower portion of the transmission unit. So the claim recites an arm extending from the equivalent of the ceramic bracket, which is described as being beneath the scooter body. Now, Song, and Mr. Sonnevans, and Placemark, contends that Song discloses that this front portion here is an arm, as shown in figure one. Would you stay by the podium, please, because we're recording. My apologies. The front portion of that structure is the equivalent, or is an arm, extended from where the extended arm is defined in claim one. However, if you look at the solemn reference, the description of that figure appearing in Song, that is the base plate, which is part of the scooter body. Claim one, so what you have here is a pair of wheels, 24, connected to the base plate of the scooter. And essentially, those wheels are described in figure two of Song as being spaced out laterally, almost to the same extent as the rear wheels, which are indicated by reference number one. I guess, if I understand Judge Dyke's question to the PTO, the questions were, why does it matter if it's still part of the base plate? I mean, who cares? Why isn't it still obvious? Whether you call it an arm and make it out of a separate piece, or just continue the base plate out and stick a wheel on it. I mean, this is low-tech stuff. That doesn't seem like a lot of ingenuity. Correct, Your Honor. It is a fairly low-tech invention. However, I'm certain that there is still room for innovation, even in the children's ride-on toy sector. But you want to hinge the innovation on the notion of a separate piece, which we'll call an arm. It doesn't actually look like an arm to me, but we'll call it that, versus just continuing the base plate out the front. And there is a description in the brief and also in the patent itself about the benefits of using an arm as opposed to... Well, it doesn't describe the safety arrangement of Song, but it talks about essentially this frontwardly extending arm forming a triangular safety area which stabilizes the front of the scooter. So it's a different mechanism to stabilize the front of the scooter than is illustrated in Figure 1 of Song. Yeah, but you agree that the claim doesn't cover the triangular shape of the arm or anything like that. The claim is broadly covered, so it would include something other than a triangular-shaped arm, right? It's not the shape of the arm. It's by frontwardly extending the arm and putting the wheel at the end of the arm, you define a triangular safety area between driving these wheels here, which I indicated by referencing the 16, and the wheel that's protected off the front of the arm. So that, by using an arm extended from the twister member, you're defining a triangular safety area. Yeah, but the problem I have with that is that I don't see that reasoning in the board's decision. I see them caught up in this issue of whether Song is an arm or not an arm, and at the same time they say it was obvious that there was a motivation to combine the two, and it just seems hyper-technical. We're arguing about whether something's an arm or not an arm. That doesn't seem to be directed to the substance of the obviousness issue. I think basically what happened, the examiner applied the rejection of Song, indicating that Figure 1 disclosed an arm. So the arguments basically responsive to that were that Figure 1 did not disclose an arm, and therefore does not anticipate the claim. The obviousness rejection seemed to be almost a restatement of whether Song discloses an arm, then it's obvious to put the arm on hand-on, which is acknowledged not to disclose any kind of safety feature. We made the two arguments, one, that it's not an arm, and two, that it's not extended from the driven portion of the twister member as recited in Claim 1. The board decided the case on the basis of the lack of an arm being disclosed in the Song reference. Do you have one final thought, Mr. Raymond? Your time is up. I would also, basically the appellant's position that you should take a drawing in isolation from the description of that drawing in the disclosure of the reference. The appellant hasn't cited any cases that support that position. Accidental disclosure is an unintended disclosure when it's not explained in the description. We understand that point. Thank you very much. Mr. Sonnebend has some rebuttal time, four and a half minutes. Just very briefly, I wanted to address two things very briefly. One, the director brought up in its argument this notion of the entire teaching. That's loaded, that's a loaded phrase, because it can go one way or it can go the other way. The two ways it can go are this. You can say the entire teaching is taking this, harmonizing it into one coherent teaching, and that's the entire teaching. That would be wrong. What an entire teaching means is everything it discloses is disclosed. That's a practical, real-world rule. If it teaches four different things... Mr. Sonnebend, I'm surprised you're arguing this hyper-technical point about the severability of meaning between a specification and a drawing when you've got a very low-tech invention and your questions here have been about whether it's really obvious or not, but you're arguing this hyper-technicality. Well, I think it is obvious. I think Judge Dike is absolutely right. The issue before the court today, primarily, the court could look at the entire decision of the board and say it's not supported by substantial evidence. The issue before the court is what appellants make in relation to the decision below. I do think it's obvious. I think putting the wheels anywhere once you know about safety wheels is obvious. I think that's clear. And I think you need to look at the prior art and see for all teachers, individually. Thank you, Mr. Sonnebend. We'll take the case under review. All rise.